1  Stacy L. Fode, Esq. (SBN 199883)
   sfode@nfclegal.com
2  Nana J. Yee, Esq. (SBN 272783)
   nyee@nfclegal.com
3  **NUKK-FREEMAN & CERRA, P.C.**
4  1230 Columbia Street, Suite 860
   San Diego, CA 92101
5  Telephone: 619.292.0515
   Facsimile: 619.566.4741
6

7  Attorneys for Defendant
   XEROX CORPORATION
8

9  **UNITED STATES DISTRICT COURT**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  CARLOS DIAZ, | Case No. 8:22-cv-01822-DOC-ADS |
| 13       Plaintiff, | **DEFENDANT XEROX CORPORATION'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT** |
| 14  vs. | |
| 15  XEROX CORPORATION; and DOES 1 through 50, inclusive | |
| 16 | |
| 17       Defendants. | |
| 18 | State Action Filed: September 6, 2022 |
| 19 | |
| 20 | Judge: Hon. David O. Carter |
| 21 | Date:  September 11, 2023
Time: 8:30 a.m. |
| 22 | Place: Courtroom 10A |
| 23 | |
| 24 | Pre-trial Conference: 9/18/2023
Trial: 9/25/2023 |
| 25 | |

26
27
28

---

*CARLOS DIAZ v. XEROX CORPORATION*                              Case No. 22cv1822
DEFENDANT'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. DIAZ'S 624-PAGE AMENDED SEPARATE STATEMENT OF DISPUTED FACTS VIOLATES FEDERAL RULES AND THE COURT'S AUGUST 24, 2023 ORDER AND MUST BE STRICKEN ........................................................................................................1

III. DIAZ HAS FAILED TO IDENTIFY A GENUINE ISSUE OF MATERIAL FACT FOR ANY OF HIS CLAIMS ........................................................................................................3

   A. With No Evidence of a Discriminatory Motive and Failure to Meet His Prima Facie Case, Summary Judgment on the First Cause of Action Is Necessary. ................................................3

      1. Diaz's Own Case Cite Undermines His Latter-Day Claim that He was a Qualified Individual ................................................................................................................4

      2. Diaz Has Not Made the Necessary Strong Showing of Discrimination .........................5

   B. Diaz's Claim for Failure to Provide Reasonable Accommodations (Second Cause of Action) Fails Because He Could Not Perform Essential Duties of Any Job and Xerox Did Not Have a Duty to Provide Further Accommodations. ................................................................6

      1. Diaz Cannot Demonstrate That Xerox Had Any Available Position ..........................6

      2. Diaz's Attempts to Misstate 30(b)(6) Testimony and Related Authority Should be Disregarded ..............................................................................................................8

   C. Diaz's Claim for Failure to Engage in the Interactive Process (Third Cause of Action) Fails Because the Undisputed Record Reflects Xerox Efforts to Engage in the Interactive Process. .................................................................................................................10

   D. Diaz's Claim for Retaliation in Violation of FEHA (Fourth Cause of Action) Fails Because There Is No Causal Link Between His Termination and Any Protected Activity.......11

   E. Punitive Damages Must Be Dismissed. ...........................................................................11

IV. CONCLUSION....................................................................................................................12

i

*CARLOS DIAZ v. XEROX CORPORATION*                    Case No. 22cv1822
DEFENDANT'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Cases**

*Barton v. Alexander Hamilton Life Ins. Co. of Am.*, 110 Cal.App.4th 1640, 1644 (2003)............12

*Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978) ....................................3

*Cleveland v. Policy Management Systems Corp.*, 529 U.S. 795 (2017)......................................4, 5

*Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1098 (9th Cir. 2005)...............................................6

*Coleman v. Bank of New York Mellon*, 798 F. App'x 131, 132 (9th Cir. 2020) ............................10

*Henderson v. Sec. Nat'l Bank*, 72 Cal. App. 3d 764, 771 (1977) ..................................................12

*J.W. v. Fresno Unified Sch. Dist.*, No. CV F 07-1625 LJODLB, 2009 WL 415295, at *2 (E.D. Cal. Feb. 18, 2009 ..........................................................................................................................2

*Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ...........................................8, 9

*Lui v. City and County of San Francisco*, 211 Cal.App.4th 962, 977-978 (2012) ...........................7

*Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 252 (2009) ..................................................2

*Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 377 (2015) ................................................8

*Scott v. Phx. Schools, Inc.*, 175 Cal. App. 4th 702, 715 (2009)......................................................12

*Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018).........................................9

**Statutes**

Cal. Gov't Code § 12926(f)(1)(A)....................................................................................................7

**Rules**

FRCP Rule 56(e)(2) .........................................................................................................................3

FRCP Rule 56(e)(3) .........................................................................................................................3

Local Rule 11-3................................................................................................................................2

Local Rule 56-3................................................................................................................................3

Local Rule 83-7................................................................................................................................2

ii

*CARLOS DIAZ v. XEROX CORPORATION*                                       Case No. 22cv1822
DEFENDANT'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

With no material facts to dispute the basis for his termination, Plaintiff Carlos Diaz uses a blunderbuss approach in his Opposition to Xerox's Motion for Summary Judgment. Rather than identify specific, material factual disputes warranting a trial, he drops most of the case record into the laps of the Court and Xerox, and expects the sheer volume of the 627-page Amended Separate Statement of Genuine Disputes to create the appearance of non-existent, triable controversies. This approach cannot save his claims, and Diaz's serial failure to comply with the Local Rules warrants striking of his Amended Statement and a determination that Xerox's material facts are admitted.

Laying this issue aside, Diaz tries to avoid dismissal by raising a jumble of boilerplate arguments and assuming without evidence that Xerox had open positions available for him in summer of 2020. Simply put, Diaz has not raised a triable issue of fact by referencing his own speculative beliefs about which positions the company had available or whether he could meet the essential functions of those positions. This is especially true in the face of the overwhelming documentary evidence of Xerox's lay-offs, unavailable positions, and business needs, which establishes that Xerox had a legitimate business reason for terminating Diaz's employment only after engaging in the interactive process during this difficult time of a global pandemic.

Diaz's Opposition does not identify a genuine triable issue of fact, because there is none. It remains undisputed that he cannot establish the essential elements of his claims as a matter of law. Summary judgment for Xerox should be granted.

## II. DIAZ'S 624-PAGE AMENDED SEPARATE STATEMENT OF DISPUTED FACTS VIOLATES FEDERAL RULES AND THE COURT'S AUGUST 24, 2023 ORDER AND MUST BE STRICKEN

As a threshold matter, the Court should strike Diaz's excessive and noncompliant Amended Separate Statement for failing to comply with the Court's

*CARLOS DIAZ v. XEROX CORPORATION*  
DEFENDANT'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Case No. 22cv1822  
Page 1

August 24, 2023 Order and local and federal rules.

The Court's August 24 Order was clear: "Plaintiff shall file a statement of disputed facts that conforms to the Federal Rules of Civil Procedure and the Local Rules by 11:59 on August 29, 2023." *See* Dkt. 55. In response, Diaz again filed a non-compliant statement of genuine dispute. The Amended Statement consists of 627 pages of repetitive and unresponsive contentions, rather than the original 694 pages.

The Amended Statement does not cure the fundamental defects that led its predecessor to be stricken. It remains unmanageable for the Court and Xerox to (1) unpack each of the "facts" contained in each response, (2) speculate on which of Diaz's citations apply to which sentences, and (3) then meaningfully respond with citations to the record.  It is entirely too burdensome to expect either to sort through such unresponsive and excessive mishmash to determine which facts are actually in dispute, if any. *See J.W. v. Fresno Unified Sch. Dist.*, No. CV F 07-1625 LJODLB, 2009 WL 415295, at *2 (E.D. Cal. Feb. 18, 2009) (holding a 141-page separate statement with "lengthy 'facts'" spanning multiple pages was overly burdensome); *Nazir v. United Airlines, Inc.*, 178 Cal. App. 4th 243, 252 (2009) (finding that a separate statement of *196 pages*—less than a third of the present submission—was improper where the "exact number of supposedly material facts is impossible to know without actually counting them, as many of the facts are often repeated with the same numbers.").

Diaz's failure to comply with the Court's August 24 Order and again submit a non-compliant statement[1] is sanctionable and the Amended Separate Statement should be stricken. *See* Local Rule 83-7 (authorizing "sanctions as the Court may deem appropriate under the circumstances."). And with Diaz's Amended Statement

---

[1] Diaz has also violated Local Rule 11-3.2 and 11-3.1.1 by packing in 29 lines per page on Opposition, rather than the allowed 28 lines, and using a 12.96-point font size, rather than the required 14-point, in order to squeeze more content into his opposition, which is prejudicial to Xerox.

| *CARLOS DIAZ v. XEROX CORPORATION* | Case No. 22cv1822 |
|---|---|
| DEFENDANT'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT | Page 2 |

stricken, Xerox's material facts are deemed admitted, and Xerox's now unrebutted facts warrant summary judgment as a matter of law. *See* FRCP Rule 56(e)(2),(3); Local Rule 56-3.

## III. DIAZ HAS FAILED TO IDENTIFY A GENUINE ISSUE OF MATERIAL FACT FOR ANY OF HIS CLAIMS

Simply repeating that there are "triable issues of fact" precluding summary judgment does not make it so, and Diaz's arguments in Opposition do not identify a factual or legal reason that any of his six claims or request for punitive damages should survive.

### A. With No Evidence of a Discriminatory Motive and Failure to Meet His Prima Facie Case, Summary Judgment on the First Cause of Action Is Necessary.

Diaz's Opposition confirms he has not established the elements of his disability discrimination claim, starting with his prima facie case. He cannot even claim that he was a qualified individual after representing to the Social Security Administration ("SSA") in February 2020, and then his long-term disability carrier Prudential two months later, that he was "unable to work" and "disabled." And he collected benefits from both attributable to July 2020 and after. By his own admission, he could not perform the duties of any gainful occupation at that time, and was under the regular care of a doctor.[2] *See* Xerox's SSUF 70-73. Under any permutation, Diaz was not a qualified individual for any available position at Xerox as of summer 2020, when he now claims he was ready to return to work.

---

[2] Diaz's after-the-fact, self-serving and speculative declaration does not raise a triable issue of fact to counter his representations in business records from the U.S. government and Prudential. *See Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978). The Prudential documents submitted by Xerox in its moving papers were obtained directly from Prudential after Magistrate Judge Spaeth denied Diaz's Motion to Quash Xerox's subpoenas to the carrier. *See* Dkt 46. So while Diaz clearly does not want these documents in the record, his argument that they were improperly included is in error and should be disregarded.

### 1. Diaz's Own Case Cite Undermines His Latter-Day Claim that He was a Qualified Individual

Although Diaz points the Court to *Cleveland v. Policy Management Systems Corp.*, 529 U.S. 795 (2017), that case undercuts his contention that he was a qualified individual who could perform the essential functions of his job at the time the time he sought to return to work in summer 2020.

Diaz repeatedly declared in legal proceedings against Prudential and to the SSA that he was "unable to work" as early as February 2020. In *Cleveland*, the Supreme Court held that when a person has represented an inability to work to the SSA, they must explain why this does not negate the element that they are a qualified individual with a disability for a discrimination claim:[3]

> An ADA plaintiff bears the burden of proving that she is a "qualified individual with a disability"—that is, a person 'who, with or without reasonable accommodation, can perform the essential functions/ of her job. 42 U.S.C. § 12111(8). And a plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' will appear to negate an essential element of her ADA case—at least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation. *Id.* at 806.

Rather than explain how he could be unable to work for purposes of his SSA and long-term disability claims, but still make out a prima facie case of disability discrimination, Diaz tries to hide behind the difference standards to determine disability in each context. But that doesn't solve his dilemma; because he

---

[3] While *Cleveland* addresses the ADA, not FEHA, it is instructive given the similarities between the two statutes as a plaintiff must prove under both statutes that he is a "qualified individual" who can perform the essential job functions with or without a reasonable accommodation.

affirmatively stated that he could not work as of July 2020 in two different legal proceedings, he needs to explain how he can be a qualified individual who could have returned to work at Xerox for purposes of his FEHA claim. But, he does not.

Diaz cannot have it both ways. "To defeat summary judgment [plaintiff's] explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'" *Id.* at 807. Diaz cannot point to a single fact to explain away or negate his repeated claims that he has been unable to work since before July 2020. *See* Xerox's SSUF 71-90. If he could not work, he cannot make out a discrimination claim.

### 2. Diaz Has Not Made the Necessary Strong Showing of Discrimination

Diaz's discrimination claim further fails because he has not explained how Xerox's legitimate, nondiscriminatory reason for his termination is mere pretext for unlawful discrimination or a discriminatory motive. Faced with Xerox's "very strong evidence" of the same actor defense (i.e., Cecile Christopher hiring Diaz back after leave with accommodations and Xerox's long history of accommodations) and business necessities relating to Covid-related lay-offs, Diaz attempts to establish pretext based on conjecture over a contractor position with Xerox's client, the Eastern Municipal Water District ("EMWD").[4] As explained in Section (B)(1), Xerox's evidence demonstrates this was a temporary contractor position, and Diaz was not qualified for the position in any event. Without more, Diaz has not met his "extraordinarily strong showing of discrimination" required to overcome the same-actor inference. *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090,

---

[4] By Diaz's own admissions, he has no theory of discrimination other than Xerox was not "able to accommodate [his restrictions], when they have in the past." *See* Xerox Compendium of Exhibits ("COE"), Ex. 1, 74:14 – 76:20.

*CARLOS DIAZ v. XEROX CORPORATION*
DEFENDANT'S REPLY MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Case No. 22cv1822
Page 5

1098 (9th Cir. 2005). Diaz has not met his burden of proving pretext, and his First Cause of Action fails as a matter of law.

### B. Diaz's Claim for Failure to Provide Reasonable Accommodations (Second Cause of Action) Fails Because He Could Not Perform Essential Duties of Any Job and Xerox Did Not Have a Duty to Provide Further Accommodations.

Diaz also has not shown that he can establish the essential elements of his Second Cause of Action for Failure to Provide Reasonable Accommodation.

#### 1. Diaz Cannot Demonstrate That Xerox Had Any Available Position

Irrespective of Diaz's abilities, by July 2020 the record is clear that Xerox did not have an open position for him to fill. Diaz's position had been eliminated following the PIMCO account closure in March 2019 during his 18-month medical leave reasonable accommodation and there were mass layoffs from the onset of the pandemic. There were no positions available on Ms. Christopher's team (she had to lay-off several employees on her team) and no Account Coordinator positions or non-contractor positions open when Diaz sought to return to work. *See* Xerox's SSUF 71-90.

In an effort to overcome this undisputed and determinative evidence, Diaz argues that he could have filled the EMWD position. But he fails to submit admissible evidence about the availability and requirements of that position. During discovery, Diaz could present only a third-party staffing agency's (Whitenack) recruitment email for the EMWD Docucare Associate position, which he erroneously calls the "mail room position." But this was not a position available for Xerox employees: the email states that the person filling the position will be directly hired by the staffing agency, not Xerox, for a one-year appointment. *See* Diaz's Exh. 36. Diaz admits that he knew the EMWD position was being offered to temporary contract workers outside of Xerox, that the job was not posted by Xerox, and that a third-party staffing agency was handling the filling of the position. *See*

CARLOS DIAZ v. XEROX CORPORATION
DEFENDANT'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Case No. 22cv1822
Page 6

Xerox COE, Exh. 1, 161:10-19; 164:9-11; 165:25-166:21; *see also* Xerox's SSUF 60-64. So he is left to suppose that this was also a position that he could fill as a Xerox employee. Diaz's erroneous surmise is not evidence, and does not make the EMWD position one that was available to him.[5]

Still further, even if the EMWD position had been a Xerox position available to Diaz, the Whitenack email also outlines the essential functions of the job, which entail a 50-pound lifting restriction and potential driving duties. *See* Diaz's Exh. 36. Diaz does not argue that he could meet these job requirements, but says instead the Court should ignore the job's requirements under *Lui v. City and County of San Francisco*, 211 Cal.App.4th 962, 977-978 (2012). But Diaz misunderstands the holding in *Lui*, which upheld the trial court's finding that the strenuous duties of a police officer were essential functions of the position because the Police Department had a legitimate need to deploy officers in those positions in the event of emergencies. On that ground, the court rejected plaintiff's discrimination and failure to accommodate claims under FEHA. *Id.* at 965. Also favorable to Xerox, the *Lui* court expressly considered defendant's job announcement in that matter as probative evidence of the types of strenuous duties required of the plaintiff and ultimately dismissed the action on summary judgment. *Id.* at 978. Similarly, the job posting Diaz produced in discovery is undisputed evidence of the essential functions of the EWMD position.

Moreover, courts also consider the employer's judgment as to what functions are essential and the time spent performing the function. *Id.* at 971-72 (noting that courts generally defer to an employer's judgment about what job functions are essential); Cal. Gov't Code § 12926(f)(1)(A) ("The function may be essential because the reason the position exists is to perform that function."). FEHA does not

---

[5] Contrary to Diaz's overstated assertions, the June 22, 2020 email reveals Diaz's managers made every effort to locate a position for Diaz in furtherance of the interactive process.

obligate an employer to eliminate essential functions from a job or reallocate them to other employees. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 377 (2015).

Diaz can point to no evidence that the EWMD position did not require him to lift up to 50 pounds. Instead, he ignores (and apparently hopes the Court will too) testimony of Christopher Clark on the staffing and production requirements of the EMWD account and the inability to reallocate the essential functions of lifting, pushing, pulling and driving to other workers.[6] The requirements of the EMWD project are undisputed.

On top of his inability to lift more than 10 pounds in June 2020 and 20 pounds in July 2020, Diaz testified that he has been unable to drive, another essential function of the position, since the onset of his retinopathy in 2016 until the present, as he has tunnel vision and cannot see to the left and right to drive, and his wife is his full-time caretaker. *See* Xerox COE, Exh. 1; 107:14-108:14.[7] As a result, he could not perform this essential function either.

### 2. Diaz's Attempts to Misstate 30(b)(6) Testimony and Related Authority Should be Disregarded

Diaz argues that Xerox should be prohibited from relying on Alan Ray's declaration providing information about the EMWD position, based on prior

---

[6] The client requirements that Xerox staff only three workers at the EMWD account, and production standards are essential to this client. Thus, reallocation of the essential function of lifting, pulling, or pushing to other employees at the site would upend production given the lean staffing permitted by the client. The client's fast-paced environment does not allow for a worker to pause their own work to assist another worker with his work without jeopardizing production. Diaz cannot demonstrate that he was qualified to perform work at the EMWD account, with or without accommodation. (Xerox COE, Exh. 15; Exh. 12, XEROX00978-79.)

[7] Diaz attempts to explain away this testimony in his self-serving sham declaration, which should not be considered. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.")

testimony from Xerox's 30(b)(6) witness in which the corporate deponent did not testify about the essential functions of that position. But Diaz misstates the effect of that testimony, and misuses *Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018) in support of his position. The *Snapp* court found that a corporate defendant like Mr. Ray *could* supplement, correct, or explain 30(b)(6) testimony:

> [T]he testimony of a Rule 30(b)(6) deponent does not absolutely bind the corporation in the sense of a judicial admission, but rather is evidence that, like any other deposition testimony, can be contradicted and used for impeachment purposes. The Rule 30(b)(6) testimony also is not binding against the organization in the sense that *the testimony can be corrected, explained and supplemented, and the entity is not "irrevocably" bound to what the fairly prepared and candid designated deponent happens to remember during the testimony.*
> *Id.* at 1104 (quoting 7 James Wm. Moore, et al., *Moore's Federal Practice* § 30.25[3] (3d ed. 2016)) (emphasis added).

Xerox's 30(b)(6) witness, Giana Carducci, was designated to testify about the "positions open in the mail room at Defendant's Perris, CA location…." But Xerox did not have a Perris, CA office/location; *EMWD* had a temporary position to be filled that was not a "mail room" position. For that reason, Ms. Carducci testified that she was unaware of the job requirements or essential functions for the EMWD account position. *See* Decl. of N. Clancy, Exh. "D," 108:20-109:18. Nothing in Mr. Ray's declaration, or elsewhere in the record, contradicts her testimony. Rather, as specifically contemplated by *Snapp*, Mr. Ray offered a declaration to supplement and explain, including that he reached out to the account manager at the EMWD client, which had a position to be filled by a third-party contractor, and asked whether Diaz could fill the position with his restrictions (he could not). *See* Ray Decl. at para. 3. There is nothing in record to competently

CARLOS DIAZ v. XEROX CORPORATION
DEFENDANT'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Case No. 22cv1822
Page 9

rebut this information, and nothing to prevent Mr. Ray from supplementing the record and testimony of Ms. Carducci.[8] This red herring argument does not negate that Diaz has failed to establish the essential elements of his Second Cause of Action, which must be dismissed.

### C. Diaz's Claim for Failure to Engage in the Interactive Process (Third Cause of Action) Fails Because the Undisputed Record Reflects Xerox Efforts to Engage in the Interactive Process.

This cause of action fails because Diaz cannot demonstrate that Xerox failed to engage in a good faith interactive process. The undisputed record demonstrates that since 2016, Xerox continuously engaged in the interactive process and provided Diaz with his requested accommodations in full through six extended medical leaves, including the final 18-month long leave, and four restriction accommodations when he returned to work. As confirmed in contemporaneous writings, in June and July 2020, Xerox repeatedly engaged with Diaz and his providers telephonically and in writing to determine whether his 10-pound and 20-pound restrictions could be accommodated.[9]

This documentary evidence is undisputed. Diaz himself testified that on July 28, 2020, he spoke with Sedgwick's representative, his manager at Xerox, and a Xerox HR representative to discuss his restrictions for returning to work and his inquiry about a position he thought was open. The lack of open positions at the

---

[8] In its moving papers, Xerox also submitted deposition testimony of Christopher Clark regarding the EMWD position, which was uncontested in Diaz's Opposition; and, thus must be considered by the Court. (Xerox COE, Ex. 15; *Coleman v. Bank of New York Mellon*, 798 F. App'x 131, 132 (9th Cir. 2020) ("It is well settled that claims or arguments not raised in opposition to summary judgment are deemed abandoned.")

[9] The Court should disregard Diaz's attempt to artificially dissect the interactive process into different timeframes in connection with Diaz's 10-pound and then 20-pound restrictions to support his own manufactured recitation of the facts. The evidence shows that a thorough and on-going interactive process occurred throughout the summer of 2020.

time and the resulting termination decision do not negate that Xerox engaged in the interactive process.[10] *See* Xerox's SSUF 49-64. His conjecture about the availability of or qualification for any particular position does not either. Diaz's Third Cause of Action fails.

### D. Diaz's Claim for Retaliation in Violation of FEHA (Fourth Cause of Action) Fails Because There Is No Causal Link Between His Termination and Any Protected Activity.

Diaz also cannot show the necessary causal link existed between his alleged protective activity and his termination. Xerox's business justification for Diaz's termination and its (and his manager's) demonstrated willingness to provide Diaz with accommodations throughout the 18 months before the termination decision negates that essential link.

Nor is there any temporal proximity between any alleged protected activity and the termination. Diaz's disability began in 2016, and he went on several leaves of absences and returned with accommodations requests since then—all of which Xerox accommodated in full. His last leave of absence began 18 months before the termination decision in July 2020. *See* Xerox's SSUF 19-68. Diaz has not provided evidence to counter these established material facts. This cause of action fails and must be dismissed.[11]

### E. Punitive Damages Must Be Dismissed.

Diaz's arguments in support of punitive damages are insufficient to avoid summary judgment, particularly given that punitive damages are disfavored.

---

[10] Plaintiff misstates the testimony of "Manager Christopher" to imply she did not engage in the interactive process, but her testimony and corroborating written evidence demonstrate she worked with Karmyn Lett of Sedgwick who led the interactive process with Diaz, while consistently noting she did not have a position for Diaz on her team in 2020. *See e.g.* Decl. of N. Clancy, Exh. "C," 64:12-65:10.

[11] Diaz's arguments about his Fifth and Sixth Causes of Action support Xerox's position that these claims are derivative of the other claims; so further argument on Reply would be duplicative.

*Henderson v. Sec. Nat'l Bank*, 72 Cal. App. 3d 764, 771 (1977). Wrongful termination, without more, does not sustain a finding of "malice or oppression." *Scott v. Phx. Schools, Inc.*, 175 Cal. App. 4th 702, 715 (2009) (termination for an improper reason does not rise to the level of spite, malice, fraudulent or evil motive, or willful or wanton behavior). Diaz has not introduced any evidence that could meet the clear and convincing evidence burden that the alleged wrongful acts were performed or ratified by an "officer, director or managing agent." *Barton v. Alexander Hamilton Life Ins. Co. of Am.*, 110 Cal.App.4th 1640, 1644 (2003). In fact, the Opposition is made up of merely argument without any cites to the record and must be disregarded. Diaz's demand for punitive damages should be dismissed as a matter of law.

## IV.   CONCLUSION

For all these reasons, Xerox asks the Court to grant its motion for summary judgment as to all causes of action pleaded in Diaz's Complaint, or, in the alternative, for partial summary judgment as to each of Diaz's claims, and for all other relief this Court deems just and proper.

Dated:  September 4, 2023          **NUKK-FREEMAN & CERRA**

By:   *s/Stacy L. Fode*
      Stacy L. Fode, Esq.
      Attorney for Defendants
      XEROX CORPORATION